✓ FILED ___ ENTERED
___ LOGGED _____ RECEIVED
3:35 pm, Sep 28 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy



**U.S. Department of Justice**

United States Attorney
District of Maryland

---

Sarah A. Marquardt
*Assistant United States Attorney*
*sarah.marquardt@usdoj.gov*
***PEB*** 08.22.23

*Mailing Address:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*Office Location:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*DIRECT: 410-209-4801*
*MAIN: 410-209-4800*

September 7, 2023

C. Justin Brown
Brown Law
1 N. Charles St., Suite 1301
Baltimore, MD 21201

Re:     United States v. Samuel Warren,
        Criminal No. TBD

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement ("this Agreement") that has been offered to your client, Samuel Warren (hereinafter "Defendant"), by the government, represented by the United States Attorney's Office for the District of Maryland and the Civil Rights Division of the Department of Justice ("the United States"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by August 30, 2023, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offenses of Conviction</u>

1.     The Defendant agrees to waive indictment and plead guilty to an Information charging him with Deprivation of Rights Under Color of Law, under 18 U.S.C. § 242, and Falsification of Records, under 18 U.S.C. § 1519. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

<u>Elements of the Offenses</u>

2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which the United States would prove if the case went to trial, are as follows:

<u>Count One:  Deprivation of Rights Under Color of Law, 18 U.S.C. § 242:</u>

That on or about the time alleged in the Information, in the District of Maryland:

1

Rev. August 2018

First, the Defendant deprived K.K. of the right, secured and protected by the Constitution and laws of the United States, to be free from cruel and unusual punishment, which includes the right to be free from a correctional officer's use of excessive force without penological justification;

Second, the Defendant acted under color of law;

Third, the Defendant acted willfully; and

Fourth, the offense resulted in bodily injury to K.K.

Count Two:  Falsification of Records, 18 U.S.C. § 1519:

That on or about the time alleged in the Information, in the District of Maryland:

First, the Defendant falsified or made a false entry in a record or document;

Second, the Defendant did so with intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States; and

Third, the Defendant did so knowingly.

Penalties

3.      The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------| -------------------|
| 1 | 18 U.S.C. § 242 | - | 10 years | 3 years | $250,000 | $100 |
| 2 | 18 U.S.C. § 1519 | - | 20 years | 3 years | $250,000 | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

     d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

     e.     Collection of Debts: If the Court imposes a fine or restitution, the Financial Litigation Unit of the United States Attorney's Office for the District of Maryland will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes the United States to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by the United States.

## Waiver of Rights

     4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

     a.     The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him.  By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

     b.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, the United States, and the Court all agreed.

     c.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

     d.     If the Defendant went to trial, the United States would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the witnesses for the United States. The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses

in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        e.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify.  If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        f.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        g.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case.  Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial, except in a criminal proceeding for perjury or false statement and under the circumstances described in paragraph 16 of this Agreement.

        h.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        i.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization.  The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty.  The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

        5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a

4

sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      The United States and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

7.      The United States and the Defendant further agree that the applicable offense level is 22 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2H1.1 and § 2J1.2. Specifically, for Count 1, under U.S.S.G. § 2H1.1, the base offense level is 18, because the offense involved two or more participants and the offense was committed under color of law.  In addition, a 2-level enhancement applies under § 3A1.3, because the victim was physically restrained in the course of the offense, and another 2-level enhancement applies under § 3C1.1, because the Defendant obstructed justice with respect to the investigation of the offense, bringing the total offense level to 22.  Because Count 1 results in the greater total offense level than Count 2, and Count 1 and Count 2 group under §3D1.2(c), the applicable offense level is 22.

8.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. However, the United States may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offenses; (iii) gives conflicting statements about the Defendant's involvement in the offenses; (iv) is untruthful with the Court, the United States, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.  If the Defendant qualifies for a decrease under subsection (a), the United States will also move for a 1-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(b), as the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

9.      Accordingly, the adjusted base offense level is likely to be 19.

10.     There is no agreement as to the Defendant's criminal history and the Defendant understands that his criminal history could alter his offense level.  Specifically, the Defendant understands that his criminal history could alter the final offense level if he is determined to be a career offender or if the instant offenses were a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of his income.

11.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

12.     At the time of sentencing, the United States and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).  The United States and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that the United States or the Defendant deem relevant to sentencing, including the conduct that is the subject of the Information.

13.     In addition, the United States will request that state prosecutors dismiss the charges against the Defendant arising out of the conduct that is the subject of the Information, in Case No. C-19-CR-22-000094 currently pending in the Circuit Court for Somerset County.  Although state prosecutors have indicated to the United States that they will honor this request, the defendant understands that the United States has no authority over the state's actions.

## Waiver of Appeal

14.     In exchange for the concessions made by the United States and the Defendant in this Agreement, the United States and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever.  This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.     The Defendant and the United States knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever lawful sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the United States or any investigating agency.

## Defendant's Conduct Prior to Sentencing and Breach

15.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, the United States, law enforcement agents, and probation officers; will cooperate in the

preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

16.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) the United States will be free from its obligations under this Agreement; (ii) the United States may make sentencing arguments and recommendations different from those set out in this Agreement; and (iii) in any criminal or civil proceeding, the United States will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that the United States is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea if the Court finds that the Defendant breached the Agreement.

## Court Not a Party

17.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

18.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between the United States and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and the United States other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kristen Clarke
United States Assistant Attorney General

Erek L. Barron
United States Attorney


Mark Blumberg
Special Legal Counsel
Civil Rights Division


Erin Monju
Trial Attorney
Civil Rights Division


Sarah Marquardt
Assistant United States Attorney
United States Attorney's Office
District of Maryland


I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney.  I understand it and I voluntarily agree to it.  I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

9/7/2023
Date

Samuel Warren


I am the Defendant's attorney.  I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the Defendant.  The Defendant advises me that the Defendant understands and accepts its terms.  To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/7/27
Date

C. Justin Brown, Esq.


8

## ATTACHMENT A

### STIPULATION OF FACTS

*The parties agree that the following facts are true and accurate, and that if this case had proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt. The parties agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

From 2010 to 2022, Samuel Warren (the "Defendant") worked as a correctional officer ("CO") at the Eastern Correctional Institution ("ECI") in Westover, Maryland. As detailed below, while working at ECI, the Defendant repeatedly punched an inmate, K.K., without justification. Then the Defendant lied about the assault—a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), an agency of the United States—in a written report, with the intent to keep investigators, including FBI agents, from learning of the incident. The Defendant admits that his conduct violated 18 U.S.C. §§ 242 and 1519.

Specifically, on July 12, 2021, the Defendant, then age 35, was working in ECI's Housing Unit 4. Late that afternoon, an inmate, K.K., entered the unit to begin his shift as an Inmate Observation Aid ("IOA"), a position typically assigned to inmates with excellent disciplinary records. While another officer was frisking K.K. at the unit's entrance, the Defendant became irritated with K.K. about the fact that K.K. was wearing a face mask (because of the COVID-19 pandemic) that was hanging below his nose. After the frisk was complete, K.K. walked onto the tier and commented that either the Defendant or his interaction with the Defendant had been "crazy." Further irritated by that comment, the Defendant decided to retaliate against K.K by forcing him to undergo a strip search that the Defendant would not ordinarily have conducted. To that end, the Defendant instructed K.K. to walk to the unit's property room, where strip searches were routinely conducted. K.K. complied and walked to the property room without handcuffs. The Defendant followed K.K. to the property room, as did two other officers, Correctional Officers ("COs") A.W. and N.D.

Once inside the property room, K.K. walked to the back of the room, where instructions for strip searches were posted on a double door. Per protocol, K.K. faced the door and began to read the instructions aloud. However, shortly thereafter, K.K. turned toward the officers to make the lewd comment that, if K.K. were facing the door, the officers would not be able to see his "dick." The Defendant instructed K.K. to turn to face the door. K.K. did so, and then turned around again to make the same lewd comment. In response, the Defendant asked K.K. if he liked his job (as an IOA). K.K. replied that he loved his job. The Defendant then stated that K.K. had lost his job. Notably, despite making inappropriate comments, K.K. did not pose a threat of harm or escape, and K.K. had begun to disrobe in compliance with the strip search instructions.

Nonetheless, the Defendant told K.K. that they would now engage in a monitored strip search procedure, which would involve handcuffing K.K. and escorting him to a cell where correctional officers would disrobe him. The Defendant handcuffed K.K. behind his back and, with K.K.'s shoes off and pants lowered, began to escort him toward the property room door. On their way to the door, K.K. pulled away from the Defendant, breaking the Defendant's grip on his

9

arm.  Again, despite this motion, K.K. did not pose a threat of harm or escape, and there was no justification to use force against him, beyond the Defendant resecuring his grip on K.K.'s arm. Nevertheless, the Defendant threw K.K. to the floor and punched him five or six times in the face and head, all while K.K. was handcuffed behind his back and lying on his side on the floor.  During the assault, K.K. did not try to get up, kick, punch, spit, or act in any way that would have justified the use of force.  The Defendant understood in the moment that the assault was entirely unjustified and wrong.  The Defendant observed that, during the assault, COs A.W. and N.D. were in positions that allowed them to see and hear everything that occurred.

After the assault, other officers entered the property room and escorted K.K. for a medical evaluation and a monitored strip search.  At that time, K.K. was bleeding and visibly injured.

That evening, the Defendant wrote a false account of these events in his incident report and read that report aloud to several correctional officers, including COs A.W. and N.D.  Among other falsehoods in his report, the Defendant omitted that he had punched K.K. multiple times without justification.  The Defendant read his report aloud in order to provide COs A.W. and N.D. an opportunity to match their reports to his.  Both COs then also read their reports aloud, with accounts that largely copied the Defendant's false account.  Subsequently, the Defendant and CO A.W. submitted those same false reports to a supervisor who was investigating the incident. However, the Defendant later learned that CO N.D. submitted a different false report that entirely omitted the fact that CO N.D. had been in the property room during the assault.

On May 20, 2022, the Defendant furthered the cover-up by lying to an investigator who was reviewing the K.K. incident on behalf of the Maryland Department of Public Safety and Correctional Services ("DPSCS").  During an interview with the DPSCS investigator, the Defendant reiterated and embellished his prior false account of the incident, and again insisted that he had not assaulted K.K.

SO STIPULATED:

Mark Blumberg
Special Legal Counsel
Civil Rights Division

Erin Monju
Trial Attorney
Civil Rights Division

Sarah Marquardt
Assistant United States Attorney
United States Attorney's Office

District of Maryland

_____
Samuel Warren
Defendant

_____
C. Justin Brown
Counsel for Defendant